IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DASHALA S. TATE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NUMBER: |
| | ) CV-21- |
| v. | ) JURY DEMAND |
| | ) |
| CHILDREN'S LIGHTHOUSE | ) |
| LEARNING CENTER, LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### I.   JURISDICTION

1.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202 and the Act of Congress known as the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 §2000e *et seq.* and 42 U.S.C. §1981 providing for injunctive and other relief against race discrimination and retaliation in employment.

2.   Plaintiff filed her race discrimination and retaliation suit within 180 days of the discriminatory treatment and ninety (90) days from the receipt of her right-to-

1

sue letter from the EEOC. Any and all of Plaintiff's 42 U.S.C. §1981 claims do not require the filing of an EEOC Charge.

## II. PARTIES

3. Plaintiff, Dashala S. Tate, is a female citizen of the United States and a resident of Birmingham, Jefferson County, Alabama. Plaintiff was employed by Defendant at its Hoover, Jefferson County, Alabama location.

4. Defendant, Children's Lighthouse Learning Center, LLC, is a corporation doing business in the State of Alabama. Defendant is an employer as defined by 42 U.S.C. §2000e(b). Defendant is also subject to suit under 42 U.S.C. §1981, as amended. Defendant maintains either actual or constructive control, oversight, or direction over the operation.

5. Defendant operates the Hoover, Alabama location. The Center is an early childhood education facility which provides educational and child care services for preschool and elementary school aged children. Defendant is a franchise and is owned by Tony Overton (95%), who resides in Texas and Kent Rogers (5%), who resides in Birmingham. There are "corporate" inspection at the Hoover location performed by corporate individuals from Texas.

2

### III. STATEMENT OF FACTS AND CLAIMS

6.  Plaintiff began her employment with Defendant on July 14, 2017, when she was hired by former Director, Vicki Craig, African-American, and Owner Kent Rogers, Caucasian.

7.  When Plaintiff was hired, her job title was Safety & Security Manager and Kitchen Manager. As Plaintiff worked for Defendant, her duties and responsibilities grew and she ultimately became responsible for duties associated with Kitchen Manager, Sanitation Manager, Janitorial Services, Transportation Manager, School Safety and Security Manager and Teacher. Plaintiff performed all these job duties and responsibilities in a satisfactory manner.

8.  On or about December 1, 2017, the Director Vicki Craig, African-American, was terminated. She was replaced by Jeannette "Jeannie" Walls, Caucasian, as Director. During Ms. Walls' tenure with Defendant, Plaintiff continually had issues with her pay. There were times, Plaintiff's pay was incorrect. Specifically, when she would work overtime, Ms. Walls would not pay Plaintiff her overtime pay and would roll it over to the next week and pay her straight time or neglect to pay the plaintiff at all. This occurred numerous times and Plaintiff complained to Walls about her pay. If Plaintiff made a complaint about the way she was being treated, her hours were cut in retaliation.

Defendant on or about April 1, 2019. Ms. Gardner and the plaintiff are/were close friends. After Ms. Gardner was terminated, she filed an EEOC Charge against Defendant on or about June 5, 2019. After Defendant received said Charge at some point after June 5, 2019, the plaintiff was immediately questioned about it and told "we are not happy with your friend." It was also during this time that many of the plaintiff's duties and responsibilities were reduced and/or taken away. At the time, Plaintiff had no idea that Ms. Gardner had sought legal representation regarding her termination and the plaintiff had nothing to do with her legal actions. However, Plaintiff began to be treated differently because of her association with Ms. Gardner, which was strictly based on their race.

10. On Friday, March 22, 2019, Jeannette Walls was terminated. Immediately on Monday, March 25, 2019, she was replaced by Michelle Shelton, Director, Caucasian. Ms. Shelton, brought in and hired the Assistant Director Christy Pearson, Caucasian. Neither of these positions were posted nor was Plaintiff allowed to apply for them even though she had previously expressed an interest in the positions. The plaintiff was qualified to fill both of these positions. Furthermore, Maggie Owens, Caucasian, filled the Front Administrator position.

11. In 2017, Plaintiff received a pay raise to $9.50/hour working 50-55 hours

4

per week, plus overtime - which was not to exceed 55 hours maximum. In 2018, the plaintiff received a pay raise to $13.45/hour in order to keep her in the back of the facility. Plaintiff finally, in March 2019, was moved to $14.00/hour right after Michelle started as the Director. Plaintiff was given these raises because Defendant said she was "too good at what you do" to move out from the back; thereby keeping the plaintiff in the back of the workplace away from the public with the pay increase.

12. Defendant provided a letter for Plaintiff verifying that she had a guarantee of 94-100 hours per pay period.

13. Throughout her employment, Plaintiff had continually sought positions/promotions (Curriculum Director, Assistant Director, Front Administrator), which are positions located up front of the school. Also, Michelle tried to offer the plaintiff an additional raise to $17.00/hour to stay in the back and not apply for any positions in the front of the school and even tried to convert it to a salary of $36,000.00.

14. The Curriculum Director was filled by Natashah Prude, Indian. However, both the plaintiff and Ashley Dailey, African-American, applied for the position. Natasha was not and is not qualified to hold the position. Defendant did not want an African-American filling the position.

15. During Plaintiff's employment with Defendant, it was evident that

5

Defendant did not want African-American employees holding management positions and/or to work in the front of the office to interact with clients.

16. In March 2019, Plaintiff spoke with Taylor Rogers, and Tony Overton regarding her wanting to move up to Front Office Administration. Plaintiff also spoke with Michelle Shelton, Director, in April 2019, about the 3 open positions in the Front Office Administration. All positions were filled with Caucasians.

17. Defendant also has a pattern and practice of treating Caucasian more favorably than African-Americans in discipline and other terms and conditions of employment. Specifically, an example is that Maggie, front office administration, has violated policy regarding inappropriate comments on social media. According to the policy, this is a terminable offense; however, Maggie was not terminated for her inappropriate actions on social media.

18. In July of 2019, employees were told by the Director that there was a Child Resources Manual available in her office for the employees to review and sign up for continuing education classes. If employees participated in classes, they would be paid for their time. Plaintiff signed up for numerous courses to better herself and her career. When the plaintiff questioned the Director about being paid for her time, she was told that she would not be paid as none of the employees up front (all Caucasian) had signed up or taken any classes. Therefore, the plaintiff was required

to use her vacation time for these classes.

19. On August 15, 2019, Plaintiff was given a write up, that she did not sign, regarding an email sent to corporate. This write up was again in retaliation against the plaintiff by Defendant.

20. In August of 2019, Plaintiff was told by management that beginning September 3, 2019 all her duties and responsibilities were being taken away except for cooking. Plaintiff was not given any reason for this change. Plaintiff was also told that she would only be working 7:30 a.m. - 1:30 p.m. Monday through Friday, with no overtime. Again, Plaintiff was given on reason for this change. Furthermore, Defendant was aware that the plaintiff's children did not get dropped off at school until 8:00 a.m.; therefore, this new schedule was impossible for the plaintiff to keep. Plaintiff was always allowed to work a flexible schedule with Defendant prior to her complaints of discrimination. Plaintiff felt these changes were in retaliation for her complaints about various discriminatory treatment and her friendship with two former African-American employees, who sued Defendant.

21. Again, Plaintiff had been provided written confirmation from the Executive Director that she would be guaranteed 94-100 hours per pay period.

22. Plaintiff further believed that Defendant set her up to terminate her when she could not meet the new schedule change.

23. After her duties and responsibilities were taken away, they were given to Caucasian employees - bus route to Natalie Clark; safety and security to Heather Mann; and laundry and sanitation to Maggie Owens, Courtney Ozment and Coco LNU.

24. Finally, Plaintiff believes the cutting of her hours and taking away her job duties and responsibilities for no reason, was done in retaliation, by Defendant in an ongoing effort to have her resign/quit her job, which she did not.

25. On Friday, September 6, 2019, Plaintiff was called into the Director's and Assistant Director's office and given five (5) write ups and terminated. Plaintiff believes this was all done in further retaliation.

### FIRST CAUSE OF ACTION: RACE DISCRIMINATION PURSUANT TO 42 U.S.C. §1981 & TITLE VII

26. Plaintiff re-alleges and incorporates by reference paragraph 1-25 above with the same force and effect as if fully set out in specific detail hereinbelow.

27. Plaintiff brings this claim for race discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, and 42 U.S.C. § 1981.

28. Plaintiff is African-American.

29. Based on the totality of the facts presented above in paragraphs 6-24, Plaintiff has been discriminated against because of her race in her termination from Defendant. These facts include, but are not limited to, comments made by

management and decision makers, the falsity of Defendant's reason for Plaintiff's termination, and evidence of preferential treatment given to Caucasian employees.

30. Defendant's proffered reasons for termination were pretext for race discrimination.

31. As a result of this discriminatory treatment, Plaintiff suffered damages in the form of lost wages, emotional distress and other compensatory damages.

32. Defendant acted with either malice or with reckless indifference toward Plaintiff's federally protected rights.

33. Plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, compensatory damages, punitive damages, and an injunctive and declaratory judgment is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

### SECOND CAUSE OF ACTION: RETALIATION PURSUANT TO 42 U.S.C. §1981 & TITLE VII

34. Plaintiff re-alleges and incorporates by reference paragraph 1-33 above with the same force and effect as if fully set out in specific detail hereinbelow.

35. Plaintiff engaged in protected activity by complaining about race discrimination during her entire tenure with Defendant.

36. Plaintiff was then treated terminated because of her complaints about race discrimination.

37. Defendant's actions, which happened within days and weeks of Plaintiff's complaints, are causally related to Plaintiff's protected activity.

38. Defendant's reason for discharging Plaintiff was pretext for retaliation.

39. As a result of this discriminatory treatment, Plaintiff suffered damages in the form of lost wages, emotional distress, and other compensatory damages.

40. Defendant engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiff's federally protected rights.

41. Plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, compensatory damages, punitive damages, and an injunctive and declaratory judgment is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

3. Enter an order requiring Defendant to make Plaintiff whole by awarding her reinstatement into the position(s) and pay she would have had occupied in the absence of race discrimination and retaliation, back-pay (plus interest), front-pay, punitive and compensatory damages and/or nominal damages, declaratory and injunctive relief, and benefits.

4. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

PLAINTIFF REQUESTS A JURY TRIAL ON<br>ALL CLAIMS TRIABLE TO A JURY

Respectfully submitted,

/s/ Gregory O. Wiggins
Gregory O. Wiggins
Counsel for Plaintiff

OF COUNSEL:

WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500
205/254-1500 (fax)

**DEFENDANT'S ADDRESSES:**
To Be Served Via Certified Mail

Children's Lighthouse Learning Center, LLC
4731 Chance Circle
Hoover, Alabama 35244